**Hannah Frank, Appellee, v. Max Siegel et al., Appellants.**

**Gen. No. 35,361.**

MATCHETT, J., dissenting.

Opinion filed October 29, 1931. Rehearing denied November 12, 1931.

WILLIAM FELDMAN, for certain appellant.

MAYER, MEYER, AUSTRIAN & PLATT, for appellee; M. PAUL NOYES, of counsel.

MR. JUSTICE MCSURELY delivered the opinion of the court.

This is an appeal by defendants from an interlocutory order appointing a receiver of the mortgaged

premises in a foreclosure proceeding. Complainant's motion for the appointment was based upon provisions of the deed of trust and upon the allegations of the bill of a default in payment of the indebtedness. The trust deed provides that, in case of default in any of the indebtedness secured thereby, the legal holder of the notes shall have the right, upon filing a bill to foreclose without regard to the solvency or insolvency of the debtor and without regard to the "then value of said premises" or whether occupied by the owner of the equity as a homestead, to have a receiver appointed with power to collect the rent of the premises during the pendency of the foreclosure suit and during the full 15 months' period of redemption, if there is a deficiency.

The bill alleges that the trust deed was given to secure four principal notes aggregating $13,500, three being for $1,000 each and the fourth for $10,500, the last payable on August 15, 1931; that the first two notes were paid and partial payments made on the third, leaving $100 due, and that no payments have been made on the interest note for $315, which matured February 15, 1931, or on the principal note for $10,500, and that by reason thereof complainant has elected to declare the entire principal due together with interest thereon. The bill also alleged that the premises are commonly known as Number 817 Milwaukee avenue, Chicago, and are improved with a three-story brick building containing a store on the first floor, occupied by one of the defendants, and rooms on the second and third floors leased for lodging house purposes and that "said premises are meagre and scant security for the moneys due the complainant."

Defendants say that this latter allegation is merely a conclusion and of no evidentiary value and argue that facts should be shown which would justify the appointment of a receiver and that no such facts were

presented. Complainant insists that the receiver was properly appointed, "irrespective of the value of the land, whether it was, as alleged, scant security for the mortgage debt or was then worth, if you please, twice the amount of that debt."

The issue is thus squarely presented whether a chancellor in such a proceeding should appoint a receiver solely upon the averment in the bill that there is a default in payment of the indebtedness, and that the trust deed conveys the rents and profits as part of the security and authorizes such an appointment upon default.

Complainant presents respectable precedents for his position. *Oakford v. Robinson*, 48 Ill. App. 270, in which there was a deficiency decree; *Niccolls v. Peninsular Stove Co.*, 48 Ill. App. 317; *Loughridge v. Haugan*, 79 Ill. App. 644; *Ryan v. Illinois Trust & Savings Bank*, 100 Ill. App. 251; *Ortengren v. Rice*, 104 Ill. App. 428; *McLester v. Rose*, 104 Ill. App. 433. In *Townsend v. Wilson*, 155 Ill. App. 303, it was said that complainant was entitled as a matter of right to the appointment of a receiver, although in this case the premises went to a sale under a decree which found that the security was scant and there was a deficiency decree. The controversy arose between the deficiency creditor and the redemptors of the land as to which was entitled to the rents in the hands of the receiver up to the period of redemption. In *Owsley v. Neeves*, 179 Ill. App. 61, the sole question was whether the court properly ordered the rents paid to satisfy a deficiency judgment. In *Bolton v. Starr*, 223 Ill. App. 39, it was decided that the money in the hands of the receiver should be applied to satisfy a deficiency decree. In *Greenebaum Sons Bank & Trust Co. v. Kingsbury*, 248 Ill. App. 321, the crucial question was whether a mortgagor who had conveyed the rents as security could by making a lease of the premises prior to his

default abridge the rights of the mortgagee or the receiver in possession after default by the act of making the lease. A similar point was decided in *Rohrer v. Deatherage,* 336 Ill. 450, where it was held that the mortgagor could not make a lease of the mortgaged premises which would interfere with the rights of the mortgagee to enter for condition broken. Thus we see that in many of the cases cited by complainant the crucial questions presented were not the single question presented here.

There is a large number of cases holding that the provisions in the trust deed for a receiver do not control. An early case was *Degener v. Stiles,* 6 N. Y. S. 474, where the court made the very pertinent statement that the claim of complainant seeking a receiver by virtue of the provisions of the trust deed authorizing such appointment in a foreclosure proceeding ''seems to be that a court of equity is bound to decree specific performance of every contract which may be entered into between parties, no matter whether it appears from the facts of the particular case that it is inequitable or unconscionable so to do or not.'' This case was quoted with approval in *Brick v. Hornbeck,* 43 N. Y. S. 301, where it was said:

''Unless the land is inadequate security, the appointment of a receiver is an unnecessary annoyance and hardship. . . . In the case of a clause in a real estate mortgage for the appointment of a receiver upon default, the court is not obliged to comply with it. . . . Parties may not, by contract, impose an obligation upon courts in such a respect. Extraordinary remedies are not resorted to, unless required. It is for the court, in every instance, to determine whether it should take upon itself such a trust, and whether it should do so depends upon whether it is necessary for the security or protection of the mortgagee.''

In *Aetna Life Ins. Co. v. Broeker,* 166 Ind. 576, the court said:

"The appointment of a receiver is a remedy; it is a part of the procedure of courts of chancery to conserve and enforce equitable rights, but it is not an equity in itself, and parties cannot bargain concerning the exercise of the jurisdiction. Such provisions, no doubt, may be entitled to some weight upon the application, but a court of equity will not enforce them where it would be inequitable or unconscionable so to do," citing a large number of cases.

In *Bagley v. Illinois Trust & Savings Bank,* 199 Ill. 76, after saying that the effect of the provisions of the trust deed conveying the rents was to pledge them for the payment of the debt as fully as the property itself and that to make this pledge effectual the appointment of a receiver to collect them was properly stipulated for, the court further said:

"It is not meant, however, to be said that a court of equity will appoint a receiver simply because such appointment is stipulated for in the mortgage. The court is not bound to enforce such a provision where it is not necessary to enforce the lien on the rents and profits for the payment of the mortgage debt. But it has been held that such an agreement in the mortgage is entitled to weight in determining whether the power of the court to make the appointment should be exercised or not. (*Keogh Manf. Co. v. Whiston,* 14 N. Y. S. 344.)" The opinion then gave consideration to the pledge of the rents and the stipulation for the appointment of the receiver and held that there was an uncertainty as to whether the property would bring a sufficient amount at the foreclosure sale to satisfy the debt and in view of the fact that the mortgagors had failed to keep the buildings insured, as they had agreed, and in view of the large accumulation of un-

paid interest, it was held that the appointment of the receiver was proper.

In this court we have repeatedly held that the pledge of the rents in the trust deed is not conclusive upon the chancellor upon the application for the appointment of a receiver; that while it is entitled to weight, all the equities of the case should be considered and that it would be contrary to the nature of a court of equity to enforce the exact letter of the contract of mortgage regardless of the necessities or equities involved. *Bothman v. Lindstrom,* 221 Ill. App. 262; *Grabowski v. MacLaskey,* 257 Ill. App. 484; *Chicago Title & Trust Co. v. McDowell,* 257 Ill. App. 492; *Reliance Bank & Trust Co. v. Skamski,* 262 Ill. App. 629 (abst.) ; *Thomas v. Damond,* 262 Ill. App. 644 (abst.).

We conclude that, as a court of equity will not enforce specific performance of every contract regardless of whether or not so to do would be unconscionable, so the provisions of a trust deed for the appointment of a receiver should not be enforced unless equitable considerations so require; that the request for a receiver is an appeal to the conscience of the court and not a demand based upon any agreement of parties purporting to restrict the discretion of the chancellor. The possession of a receiver is the possession of the court and parties cannot by contract impose this burden of administration upon the chancellor regardless of the necessities of the situation.

It follows from what we have said, that the burden of showing to the court facts which would justify the appointment of a receiver is upon the complainant. By the ancient practice of chancery in England a receiver was not appointed until after the coming in of the defendant's answer. This was for the purpose of enabling the court to weigh the respective claims as to the circumstances. Later this practice was changed, but it was held that there must be strict and special

reasons for the appointment before answer, such as immediate danger to the property. It is now the settled practice in England and in many jurisdictions in this country that a receiver may be appointed before answer where complainant can satisfy the court that there is a clear proof of the exigency of the particular case. 53 C. J. 56. Consonant with this it was said in *Bagdonas v. Liberty Land & Investment Co.*, 309 Ill. 103: "Application for the appointment of a receiver is addressed to the sound legal discretion of the court. It is a high and extraordinary remedy. The power is not arbitrary and should be exercised with caution and only where the court is satisfied there is imminent danger of loss if it is not exercised. The general rule is that the applicant must show . . . that the property itself, or the income arising from it, is in danger of loss from neglect, waste, misconduct or insolvency," citing several cases. To the same effect is *Aetna Life Ins. Co. v. Broeker*, 166 Ind. 576, where it was held that to justify the appointment of a receiver *pendente lite*, "the mortgagee must show" that the premises are insufficient to secure the payment of the mortgage debt.

It is inherent in the very nature of the proceeding that the applicant for a receiver must first show the necessity for such appointment. It would be a controversion of well settled rules to require the defendant in the first instance to show that the necessity did not exist.

For the reasons indicated we hold that the receiver in this cause was improvidently appointed and the order is therefore reversed.

*Reversed.*

O'Connor, P. J., concurs.

Mr. Justice Matchett dissenting: I agree with what is said in the foregoing opinion as to the application

for receiver being addressed to the sound legal discretion of the court, that it is a high and extraordinary remedy to be exercised with care and caution. It should never be used as a means of oppression, but where, as here, the mortgagor conveys the rents, issues and profits as additional security, where it is made to appear that a substantial default in payment of principal and interest has been made, and that the mortgagor has conveyed to a third party the equity of redemption, and where such holder is collecting the rents and profits which have been so assigned as secured, it seems obvious to me that unless a receiver is appointed to collect the rents, the same will be dissipated, the security taken destroyed and the contract of the parties practically abrogated. I think that where such a showing is made it is then for the defendant to present to the court facts, if such facts exist, which will satisfy the court that the appointment of a receiver is inequitable. Defendants here did not do this. They had notice, but they did not appear. The holder of the equity in this case is not the mortgagor but is one to whom the mortgagor has conveyed and who now under this ruling, although he did not appear to object after notice, is to be allowed to take the rents which his predecessor had pledged to secure the indebtedness. I cannot see equity in this nor facts which could appeal to a court of conscience. On the contrary, it seems to me that the ruling adopted gives opportunity to the speculator on the equity to get that to which he has no right either at law or in equity.

JUSTICES OF THE APPELLATE COURT specially concurring: We concur in the holding of the majority opinion that, even though the trust deed conveys the rents and profits as security and provides that a receiver of the premises may be appointed upon default in the payment of any of the indebtedness, a receiver should not be appointed solely upon the allegations of

a bill to foreclose that there is such a default and a general allegation that the security is scant.

We also concur in the holding that the burden is upon the applicant for a receiver to present facts by verified bill, petition or by evidence showing the necessity for such an appointment.

MARTIN M. GRIDLEY
KICKHAM SCANLAN
OTTO KERNER
HUGO M. FRIEND
FRANCIS S. WILSON
OSCAR HEBEL.